AMERICAN SAMOA GOVERNMENT

v.

TAULAFOGA FESAGAIGA aka SAITO

High Court of American Samoa
Trial Division

CR No. 60-86

February 23, 1987

Before REES, Chief Justice.

Counsel: For the Government, Tauivi Tuinei,
Assistant Attorney General
For the Defendant, Aviata Fa'alevao

Opinion and Order on Post-Trial Motions:

Taulafoga Fesagaiga, also known as Saito, was charged with two counts of Assault in the Second Degree. At his initial appearance before the District Court he said he could afford his own lawyer. Later, however, he told the District Court Judge he was unable to afford a lawyer and wished the court to appoint one for him. After asking him a few questions about his income and assets, the District Judge appointed a lawyer.

After a jury trial in which Mr. Fesagaiga was acquitted, the court received two documents from his lawyer. One was a request for reimbursement of attorney's fees of up to $1,840. (The court has since determined that $1,500 is a more appropriate fee.) The other document was a motion to reimburse the defendant $2,000, the amount he had posted in

cash as a bail bond. Curious about how someone could be so poor that the taxpayers should pay his legal bills and yet be able to come up with $2000 in cash on short notice, the court ordered the defendant to show cause why his attorney's fee should not be paid out of the $2000 he had posted with the court.

At the hearing on the order to show cause, Mr. Fesagaiga testified that he had obtained the $2000 from a man he referred to as "my Korean friend." Upon questioning by the court he revealed that this benefactor was his employer, who seems to be far more generous in posting bail bonds than in paying wages. Mr. Fesagaiga testified that he earns only about $100 per month, and that no other funds are available to him either to pay his attorney's fees or to support his family.

The court took the motion under advisement in order to review a transcript of what Mr. Fesagaiga had told the District Judge.[1] This testimony, although not apparently untrue, seems highly

---

[1] It should be noted that in the five working days it has taken for the court reporter to produce a transcript of Mr. Fesagaiga's appearance and for the Chief Justice to review that transcript, to decide how to rule on Mr. Fesagaiga's motion, and to write this opinion, various court employees have received telephone calls from members of Mr. Fesagaiga's family concerning the case. It is a judge's sworn duty to decide each question on its merits and not to be prejudiced against litigants even when they behave improperly. It cannot be emphasized too strongly, however, that attempts to pressure or influence the court are far more likely to backfire than to succeed. (It is true that what feels like improper pressure to one person may feel more like healthy curiosity to another. It is because of the likelihood of such misunderstandings that courts have rules requiring all communication with the court on behalf of a litigant to be through the litigant's attorney, with notice to the opposing party.)

misleading.    Asked about his monthly expenses, Mr. Fesagaiga responded:

> I am the sole supporter of  my family and
> my  father's  matai  title.  I'm the only
> one working and the  only one  that earns
> an income  that goes to the providing and
> caring for the need[s] of the family.

Mr. Fesagaiga's father is Mauga.    There is no higher  title  and  no  more  influential family in American Samoa.  Perhaps  the  implication  that the welfare  of  the  Mauga  title and the Mauga family depend solely on Mr. Fesagaiga's $100 per month was unintended.    Even if  he was referring only to his father's  immediate  family,  however,  this family should  not  have  been  used as an excuse to avoid payment  of  attorney's  fees,  but  as  a possible source of payment.

Mr. Fesagaiga testified that he lives with his father and is actively engaged in rendering service to him.    Members  of his family have been actively involved in the case from the beginning; the $2000, for  instance,  although  it  may  well  have ·been provided by his employer,  was brought  to court by Mr.  Fesagaiga's  sister.    Indeed,  an  important element of his successful defense at  trial was his claim  that  the  incident  in which he was charged began with an insult  to the  honor of  his family. His employment  at Korea House --- and the alacrity with which the  manager  of  that  institution came forward  with  $2000  in  cash  for bail --- say at least as much about  the respect  and the resources commanded by  his family  as they  do about his own personal qualities, although these  are undoubtedly many.    And  yet  he  asks  to be treated, for the purpose of determining his poverty if  for no other purpose, as though he were not his father's son.

In  ·retrospect,  it  seems  as  though  Mr. Fesagaiga should not  have  been  declared indigent without  a  determination  of  whether his family's assets were sufficient to pay his  attorney's fees. In the  future, at  least when  a defendant resides with his parents, this will be the practice.  Since no  evidence  was  taken in the original appearance concerning any assets other than those  held in Mr. Fesagaiga's own name, however, and since it appears that he truthfully  answered  the  District Judge's questions about  these assets, the District Judge's finding that he is  indigent will  not be reversed. Although  it  seems  unfair  for  Mr.  Fesagaiga to charge the taxpayers for his lawyer,  it would also

31

be unfair for the court to apply a different rule now than was applied at the beginning of the case. The $2000 will be returned to him.

We leave it to Mr. Fesagaiga's conscience and to his family whether his attorney's fees will be paid by the taxpayers or by those who are, according to Samoan tradition, primarily responsible for his needs.

Mr. Fesagaiga may have been under an honest misunderstanding, which we should clear up: the provision for appointment of an attorney for indigent defendants is not a general entitlement of all citizens. Unlike a government pension plan, it has nothing to do with anything the recipient has earned. It is not designed to enable those of us who are wealthy or moderately well-off to avoid the inconvenience of paying a lawyer when we would rather have a vacation or a new car. Rather, it is reserved for those very poor people for whom it is impossible to pay. It is a kind of public welfare program.

Many American Samoans are justly proud of the fact that the people of the Territory have rejected the introduction of federal welfare programs here, on the ground that Samoan families take care of their own needy members. Partly for this reason, the total annual budget for court-appointed attorneys is only $15,000. This money does not come from Washington but must be provided from local government funds, and in the past it has been adequate. For one/tenth of it to be used in a single case, not by a defendant who would otherwise find himself alone and friendless but by a prominent member of one of the Territory's leading families, seems morally wrong even if it is legally permissible. If Mr. Fesagaiga wishes to bring this shame on his family the court will not prevent him from doing so. But if he should prefer to pay whatever he can afford, taking into account all of the resources available to him, he is also free to take that course.